State vs. Thomas.

No. 12,576.

THE STATE OF LOUISIANA VS. NELSON THOMAS.

A *venire* drawn in the absence of two members of the jury commission will not be set aside, it appearing that the absent members had notice of the time and place for the drawing.

The *proces verbal* of the drawing of a *venire* may be supplemented by the certificate of the clerk, made as required by the statute, showing that the absent commissioners had been duly notified. It need not be incorporated in the *proces verbal* of the drawing of the *venire*.

The suggestions of the District Judge in matter of the clerk's certificate were proper, and offer no ground for objection.

The *proces verbal* written by the deputy clerk, under the control and direction of the clerk, is not an irregularity for which a *venire* should be quashed.

The date for the drawing of the *venire* was sufficiently shown, and in time to notify all concerned.

The requested instruction to the jury was sufficiently clear to make it proper to instruct the jury that " concealment after the act, without previous preparation, is not necessarily proof of intent."

The trial judge should, in all trials for murder, instruct the jury under Art. 785 of the Revised Statutes that they may find the prisoner guilty of manslaughter, State vs. Brown, 41 An. 411, and State vs. Jones, 46 An. 1395.

It was a misdirection in matter relating exclusively to a murder trial, in which the court is specially required to inform the jury that four verdicts might be found.

APPEAL from the Tweenty-third Judicial District Court for the Parish of Tensas. *Tullis, J.*

*M. J. Cunningham,* Attorney General, and *B. F. Young,* District Attorney (*P. A. Simmons, Jr.,* of Counsel), for Plaintiff, Appellee.

*George H. Clinton* and *Abner E. Green* for Defendant, Appellant.

Submitted on briefs November 20, 1897.
Opinion handed down December 28, 1897.
Rehearing refused, reasons assigned, February 21, 1898.

The opinion of the court was delivered by

BREAUX, J.   The defendant was indicted by the grand jury of the parish of Tensas on the sixth day of July, 1897, for the alleged murder of Ada Jackson in the parish on the fourth day of July, 1897.

On July 7, 1897, he presented to the court a motion to quash the *venire* and a motion to quash the indictment.

The following were the grounds:

That the *proces verbal* did not set forth that all the members of the jury commission had been notified of the time and place for the drawing of the *venire*, nor that the jurors selected were to serve at any particular term or any specified day, and that two of the members of the jury commission were absent; that the *proces verbal* was written by one who was not a member of the commission. The motion was overruled. The accused also contends that the judge erred in refusing to specially instruct the jury as requested.

The accused was found guilty as charged.

From the verdict of the jury and sentence of the court, he prosecutes this appeal.

The *proces verbal* shows that the commission met on the 24th of May, 1897, to draw persons to serve as jurors at the ensuing term of the court for the parish to serve, beginning on Monday of July, 1897.

The date was left in blank.

This omission the defendant urges, through counsel, was a fatal irregularity.

The order of the court in due time directed the commissioners to summon a jury for the first and second week of the regular term of the court beginning on Monday, July 5, 1897, the date which was omitted from the *proces verbal*. The order was spread on the minutes and was also published in the official newspaper of the parish, and the commissioners manifestly acted with reference to that date. The omission was owing to a clerical oversight which does not appear to have prejudiced the defence.

No prejudice of any kind to the defendant is alleged.

Parol evidence of the clerk having been admitted (over defendant's objections set forth in a bill of exceptions) to supply the omission, counsel assert that the *proces verbal* of the proceedings of the jury commission is in character sacred and should not be changed by the testimony of witnesses or made dependent upon the unreliable memory of men.

The argument in support of the position is not, in our view, convincing. Even with reference to the minutes of a court which have always been considered as clothed with authenticity, unimportant

omissions may be supplied, a date may be inserted. The court for a similar reason may order a blank filled with a proper date, prior to taking any action based upon the document to which the date is added.

The statute from which we quote has not given the importance claimed to omission in the *proces verbal*, for " defects in the drawing of the jury can not be taken advantage of unless it appears that some fraud has been practised, or great wrong committed in the drawing and summoning of jurors that would work a great and irreparable injury to defendant."

There was nothing of the sort in this case—only the omission of a date evidently omitted by oversight which the previous order shows, and every one must have known bore the proper date. The omission and the correction could not take any one by surprise or be in the least misleading. It was not shown that it could have caused the least injury.

We pass to the next point argued by defendants' counsel: that the clerk's certificate showing proper notification of the absent commissioners was not made in due time.

The statute provides: " Three members of said commission together with the clerk of the District Court shall be sufficient number to perform the duties imposed by this act, provided all the members shall have been duly notified by the clerk of the District Court of the time and place designated by him for the meeting of said commission, which notification shall appear from the certificate of the clerk in case of the absence of any member thereof."

As a matter of fact the clerk had given the required notice as shown by his own testimony. The duty had been performed although there was no record evidence, as there should have been, establishing that it had been performed.

The court after the clerk had testified directed the clerk to make a proper certificate based upon his testimony.

In case of the absence of any jury commissioner, it shall be made to appear that he had been duly notified. The time within which it shall be made is not specified by statute.

In our judgment it was not too late to make the affidavit at the time the motion to quash was tried. The evident purpose in adopting the statute was to require notification, in due time, to each of the commissioners. The requirement as to notification had been

complied with and proof of the fact was not in our opinion untimely admitted in evidence.

Notification is required in order that three members of the jury commission together with the clerk of the District Court may be a sufficient number to perform the duty imposed by the act.

The complaint is not that the members of the jury commission were not notified; but that the *proces verbal* does not set forth that they were notified. The language of the statute is a complete answer: it is made the duty of the clerk to frame a proper certificate showing that notice has been given to the commissioners. Although it is desirable that it be made as soon as possible after the notice, the delay within which it should be made is not expressed, nor is it set forth in the statute that the certificate shall be part of the *proces verbal* of the jury commission, as contended by the defendant.

It is true, as stated by counsel for the accused, that it appears of record that it was at the suggestion of the court that the certificate was made.

We do not think there was any impropriety in the suggestion, the court has the authority, in a matter general in character, as this was, to direct that proper document be prepared.

It was offered (after it had been prepared) by the District Attorney in evidence.

We have not found in this ruling of the court anything inconsistent with the possibility of a fair trial. The trial judge has authority and discretion with which it is not our duty, nor only inclination to interfere, unless it clearly appears that he has acted arbitrarily and without due regard to the rights of the defendant. The complaint of the defendant upon this point, grounded upon the alleged improper suggestion of the court to the District Attorney, is not sufficiently sustained by the facts of record to justify our interposition.

It is true it appears that on the trial of the motion to quash the *venire* and the indictment, the court "reopened the note of evidence without a suggestion from the District Attorney."

It was then that the District Attorney offered the order of court, ordering the jury commission to draw a jury for the jury term commencing July 5, 1897, to which the defendant objected.

The reopening of a note of evidence (upon a motion to quash), contradictorily with a defendant, and on the day it had been closed, is not in our judgment a good ground for disturbing the verdict. Such

reopening is not of sufficient gravity to vitiate the proceedings. The trial judge on the trial of such a motion is not always bound for obvious reasons by the strict rules applying when the defendant is placed on his trial before the jury. Of that view the court must have been in State vs. Gonsoulin, 38 An. 462, in which case a witness, after he had testified on the trial of a motion and the evidence closed, was granted leave to return and correct part of his testimony that had been taken down, and the accused was not permitted to reopen the evidence upon the subject of inquiry. Another ground advanced by the defendant to quash the indictment and to set aside the *venire* is that it does not appear from the *proces verbal* of the drawing of the *venire* that it was drawn or summoned to appear at any particular term of court or upon any specific day.

We find, as a matter of fact, that the commission met at the time designated by the trial judge, viz.: on the twenty-fourth day of May, 1897, and drew the number required for service as jurors at the ensuing terms to begin on Monday of July, 1897, and that in the *proces verbal* the date was left in blank, but the order of the court contained the date under which the commissioners acted.

The date the ensuing term was to begin. The omission was not a fatal irregularity. It was a clerical oversight. It is not charged that any of the acts complained of were committed in fraud of the rights of the accused or that they worked upon him irreparable wrong essential to set aside and annul a *venire*. Act 99 of 1896.

In the next place it is urged by the defendant that the *proces verbal* was written in the handwriting of a deputy clerk. The point loses all importanse in view of the fact that the record shows that the whole of the *proces verbal* was written under the dictation of the clerk.

Similar acts of a deputy clerk were passed upon in two decisions of this court of recent date. State vs. Johnson, 47 An. 1092; State vs. McCarthy, 44 An. 324.

The deputy, as in the case here, acted under the direction of the jury commission.

This brings us to the next proposition founded upon the refusal of the trial judge to specially instruct the jury (as requested by defendants' counsel) as follows:

"Concealment after the act where there was no previous preparation is not necessary evidence of intent."

The trial judge incorporated in the bill of exceptions his reasons for declining to specially instruct the jury; these reasons are: "It was calculated rather to confuse than to enlighten the jury."

Further: "If the charge requested means that the concealment of the body of the deceased by the accused after the killing is not necessarily evidence going to show the criminal intent with which the killing was done, it is not a correct statement of the law."

Counsel for accused argued that "proof" and "evidence" are frequently used as synonymous terms and are interchangeable words, and that the instruction requested was equivalent in meaning to the instruction "concealment of the body after the killing without previous preparation was not necessarily conclusive evidence of a deliberate intent to take life."

The contention of counsel meets with some support from highly trustworthy source.

"The word evidence, in legal acceptation, includes all the means by which any alleged matter of fact the truth of which is submitted to investigation is established or disproved. This term and the word proof are often used indifferently, as synonymous with each other; but the latter is applied by the most accurate logicians to the effect of the evidence and not to the medium by which truth is established." Greenleaf, Sec. 1, Vol. 1.

As relates to "concealment" after the act evidence of concealment is admissible, as it goes to show criminal intent, and as such it should be weighed, but it is proper on request to instruct the jury that it does not necessarily constitute proof. It admits of no question.

Concealment after the fact is not proof conclusive of intent to commit murder. For instance, in a case of manslaughter the slayer may seek to conceal the body of his victim without its being an evidence of the previous intent to murder.

We are of the opinion under the circumstances the jury should have been instructed in view of the terms of the original charge: that concealment after the deed was not conclusive proof of intent.

The whole charge appears of record. It was annexed to and forms part of a bill of exceptions. The case in the charge was considered solely from the point of view of murder *vel non*. No instruction whatever as relates to manslaughter was given to the jury. In closing the charge the following was the language used: "The punish-

ment denounced by law for murder in this State is death, but juries are permitted when they see proper to qualify their verdicts that the punishment is reduced to imprisonment for life at hard labor. So there are three verdicts you might render in this case, viz.: ' Guilty as charged,' which means that the death penalty is imposed; ' Guilty without capital punishment,' which means that the prisoner would be imprisoned at hard labor for life, and ' Not guilty.' ''

In remanding the case for error in matter of the charge we desire to state that there are four verdicts which a jury might render in any case in which the accused is charged with murder—that is, the fourth, guilty of manslaughter.

Under the jurisprudence of this State it is as imperative to give the fourth as it is to give the third instruction to the jury.

We are of the opinion, said the court in State vs. Jones, 46 An. 1398, that on all "trials for murder it is the duty of the District Judge *ex proprio motu*, without request from counsel; to charge the jury that among the verdicts which they are permitted by law to return under an indictment charging a person with murder is a ver - dict of manslaughter, as much so as to inform them that under an indictment for murder it is lawful for the jury to qualify their ver - dict by adding thereto ' without capital punishment,' and that it is reversible error in any case that the judge should have failed to so inform them. And if this be so how much stronger is the case where a judge not only fails to give such information, but expressly declares that in the case before him such a verdict would not be applicable.''

The court cited in support of this position State vs. Brown, 40 An. 725, and State vs. Brown, 41 An. 11. Under this view the failure to instruct the jury as stated was not a mere omission to charge. It was a misdirection.

Upon this point the case is absolutely exceptional and entirely *sui generis*. It does not apply to lesser grades in matter of other crimes charged. It only applies to trials for murder, and is limited in those cases to informing the jury that a verdict of guilty of the crime of the lesser grade, manslaughter, may be found.

It is therefore ordered, adjudged and decreed that the judgment and sentence appealed from be annulled, reversed and set aside as not good in law, and that the verdict of the jury be set aside and the

defendant remanded in custody subject to the orders of the District Court of the parish of Tensas.

The Chief Justice takes no part in this decision.

MILLER, J. dissents.

## ON APPLICATION FOR A REHEARING.

BREAUX, J. On reconsideration of the grounds upon which this case was remanded we have concluded to adhere to them, and not to grant a rehearing.

The rule which has heretofore been laid down by the decisions of this court applies to cases in which the accused stands charged with murder.

In cases of that character, it is, in our view, the duty of the trial judge to charge the jury that they may return a verdict of guilty of manslaughter, if they should find that he is guilty of manslaughter and that he is not guilty of murder.

It is not left to the trial judge to determine whether the charge of manslaughter is a part of the law of the case; or whether, in other words, the *facts* call for a charge as to manslaughter.

The matter is left to the jury, who are to be instructed as before stated.

The error being fundamental because of the language of the statute in such a case only; we concluded to remand the case.

The rule is limited exclusively to cases such as the one before us. As relates to other crimes it does not apply. It is in that respect *sui generis* and does not apply in all cases; but we repeat it applies in cases in which the accused is tried for murder.

Rehearing refused.