# CHARLESTON.

STATE *v*. LILLY.

Submitted January 16, 1900.—Decided March 24, 1900.

1. CRIME—*Principal.*
    There can be no accessory to a crime not committed by a principal. (p. 497).

2. CRIME—*Accessory.*
    Under the laws of this state, to convict a person as an accessory to a crime, he must be indicted and tried as such. (p. 497).

3. PUNISHMENT—*Principal—Accessory.*
    A guilty principal cannot escape punishment because he is not guilty as an accessory. (p. 497).

4. TRIAL—*Jury Verdict.*
    Where two persons are indicted and tried jointly for the same offense, the same jury may, by separate verdicts, acquit the one and convict the other. (p. 498).

5. CRIME—*Evidence—Reasonable Doubt.*
    Where the crime of abortion is fully established, and the circumstantial evidence establishes beyond a reasonable doubt the guilt of the accused to the satisfaction of the jury, the verdict will not be set aside because the evidence fails to show the character of the instrument, or the time when used to produce the abortion. (pp. 498-499).

Error to Circuit Court, Kanawha County.

Sam. F Lilly was convicted of crime, and brings error.

*Affirmed.*

E. W. WILSON and A. B. LITTLEPAGE, for plaintiff in error.

EDGAR P. RUCKER, ATTY. GEN., and J. A. OLDFIELD, for the State.

DENT, JUDGE :

H. F. Craig and Sam F. Lilly were jointly indicted in the criminal court of Kanawha County for producing an abortion on A. F. McMillan. They were tried by the same jury. Craig was acquitted, and Lilly convicted. On a writ of error, Lilly insists that, according to the evidence, he was merely an accessory, and Craig, the principal, having been acquitted, he could not be convicted. If Lilly had been indicted as an accessory, his position would be tenable, for, to convict an accessory, the crime must have been committed by the principal; otherwise, there could not be an accessory. Where there is no crime there can be no complicity therein. *State* v. *Mainor*, 28 N. C. 340; *Maybush* v. *Com.* 29 Grat. 857; *Hatchell* v. *Com.*, 75 Grat. 925; 1 Am. & Eng. Enc. Law, (2d. Ed.) 269. But Lilly is not indicted or prosecuted as an accessory, but as a principal. Then the only question presented is as to whether there is sufficient evidence to justify the verdict of the jury. The evidence shows that an abortion was committed by some one. This is beyond dispute. The first count in the indictment charges that it was produced by the administration of the oil of tansy; the second, by a certain substance, the name and character of which are to the jurors unknown; the third, by a certain instrument, the description and name of which are to the jurors unknown; and the fourth count, by certain unknown means. These counts all appear to be good and sufficient under the law.

The main reason given for asking the acquittal of Lilly is that the witness A. F. McMillan swore that Dr. Craig used a sharp instrument upon her in the presence of Lilly. She says she felt no pain, and no water followed the insertion of such instrument. Dr. Craig testified that,

while he was present on the occasion referred to, he did not use any such instrument. The jury rejected the woman's testimony on this point, and acquitted the physician. This they were justified in doing. But the testimony shows plainly, beyond all reasonable doubt that an abortion was committed, as charged in the indictment, with a sharp instrument, to the jurors unknown. The woman, Dr. Craig, or Sam Lilly did it. Dr. Craig is acquitted. The woman testifies she did not do it herself. The jury has the, right to weigh her testimony, and reject such portions as they deem false, and accept such portions as they deem true. The proof of an abortion rests usually on circumstantial evidence. 1 Am. & Eng. Enc. Law (2d Ed.) 195.

The criminating circumtances against Lilly are as follows: Lilly had been living with the young woman (only eighteen years of age) in adultery. She had become pregnant by him. He administers drugs to her for the purpose of producing a miscarriage, which shows his desire and intent to get rid of his unborn child. He is present at her bedside on all occasions when physicians are called in. The abortion is produced. He is present to receive and dispose of the fetus. He compels the victim of his unhallowed lusts to go before a magistrate and take a false oath as to his administration of drugs to her with criminal intent. He has the law on the subject of abortion read to him, and claims that the law would justify what was done, and, after indictment, claims the trial would not amount to much, for the reason that the woman had sent him bows of her hair, and would not appear against him. The jury disbelieved the woman when she said Craig had produced the abortion, they believed her when she said she did not produce it herself, and, finding that neither she nor Craig produced it, there was but one other alternative,—to find that Lilly did do it. Dr. Aultz says that on examination he found the womb punctured, and every evidence of an abortion. He also says that this was in December, and that in October Lilly asked what he would take to cause a woman to miscarry. This evidence was uncontradicted, and tends to show that an instrument was used. It is not necessarry to show the character of the instrument.

*Com.* v. *Snow*, 116 Mass. 47. The crime, the motive, and the opportunity are shown, corroborated by previous attempts, the concealment of the evidence, the manufacturing and suppression of testimony by threats of violence, and other conduct amounting to almost absolute admissions of guilt. From all these taken together, it is impossible to see how the jury could have arrived at any other verdict, or how a stronger case of circumstantial evidence could have been made out, unless the jury had before hand become eyewitnesses of the perpetration of the crime. The evidence tends to show that the "jobbing" done (if done at all) by Dr. Craig was not successful, while the "jobbing" done by some one else was successful. But one other person had the opportunity and the motive, besides herself, and she says that she did not do so. Dr. Craig says that she told him that she had done so with a lead pencil. She was then in the presence and under the coercion of Lilly, but the doctor made no examination, and the evidence that no water passed tends to show that, if she made such a statement, the crime had not yet been accomplished. Three days afterwards, when Lilly brought Dr. Aultz, the crime had been perpetrated, although not fully consummated. He left them alone, and when, shortly afterwards, he returned, he found that the crime had been consumated, and the result and the evidence thereof had been removed and buried by Lilly. It matters not how produced,—Lilly was certainly the instigator, the promotor, and prime mover thereof. Whether he did the "jobbing" or not he was a principal in its procuration. This girl, as shown by her own testimony, was as completely under his control as though under lawful coverture. He, a married man, with a large family, had deserted them, and had seduced and was cohabiting with this girl, still in her minority, as though she were his wife. She, created as a divine fountain for the propagation of the human race, is induced by him to become a mere instrument for the satisfaction of his more than brutish lusts, and when nature asserts itself, in producing the result which is the only righteous justification for such intercourse, he proceeds to destroy it, as an unwelcome interference with his beastly prostitution both of himself and

his unfortunate victim. This prosecution is limited to the crime of abortion, but the lawless adultery leading up to and culminating in the crime adds to its heinousness. While adultery among the early Jews was punished with death, the crime of abortion was unknown. A woman's pride was in her offspring, and childlessness was her reproach. There is no crime more heinous against humanity or the Creator. As compared with it, second-degree murder is commendable; for while the one has but one victim, and destroys only the body, the other has two victims, and destroys both soul and body. Man's present laws visit the severest punishments on murder, out of common sympathy for the common frailties of human nature, and because of the inabilities of an imperfect creature to mete out perfect justice. This must be left to an Infinite Being, of infinite wisdom and justice. It would certainly seem, however, under the light of this evidence, and the certain guilt of the prisoner, that three years' confinement in the penitentiary is none too severe. The judgment is affirmed.

*Affirmed.*