Here we have seen that Rocquet & Co. was not authorized to receive notice.

Learned counsel for plaintiff invite our attention to the law of the state regulating insurance as sustaining their contention.

We will begin by stating that there is no evidence showing that the insurance companies paid Rocquet & Co. a commission or any stipend for its services.

The local agents divide the commission among themselves. This is a division of commission with which the insurance companies have naught to do.

The law in question (Act No. 105 of 1898) is directed against unauthorized agents and has for object the imposition of a penalty for acting as such. It prohibits the payment of brokerage, commission, or rebate to any but authorized agents, and it has for further object to regulate generally the insurance business.

The division of commission among agents is not an act of the company, nor is it an act for which a company not in the least concerned can be made to answer. No such penalty can be imposed upon company entirely innocent in matter of dividing commission among the agents.

For reasons stated, the rule nisi is recalled and discharged, applicant's demand is rejected, and the petition dismissed.

=====

(52 South. 185.)

No. 18,047.

STATE v. KINCHEN.

(March 28, 1910. On Application for Rehearing, April 25, 1910.)

*(Syllabus by Editorial Staff.)*

1. HOMICIDE (§§ 83, 309*)—ACCESSORY BEFORE THE FACT—CHARGE ON MANSLAUGHTER.

Notwithstanding Rev. St. § 972, provides that the punishment of the accessory shall be the same as that of the principal, and under section 785, providing that there shall be no crime known as murder in the second degree, but on trials for murder defendant may be found guilty of manslaughter, it is necessary in all cases of murder that there be given a charge, though not requested, that the jury may bring in a verdict of manslaughter, such a charge need not be given on a prosecution for being an accessory before the fact to a murder; as there cannot be an accessory before the fact to manslaughter.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 109, 649–656; Dec. Dig. §§ 83, 309.*]

2. CRIMINAL LAW (§ 107*)—VENUE.

Const. art. 9, providing that trials shall take place in the parish in which the offense was committed, controls any statute to the contrary.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 219; Dec. Dig. § 107.*]

3. CRIMINAL LAW (§§ 737, 791*) — VENUE — SUBMISSION OF QUESTION TO JURY.

Though on a prosecution for being an accessory before the fact to a murder the only acts of counseling and procurement directly testified to were located by the witness in a parish other than that of the trial, yet evidence that defendant was seen in the company of the murderers near the scene of the murder, in the parish of the trial, within an hour of its commission, authorized the submission of the question whether there had been any counseling and procurement by defendant in the latter parish; but the jury should also have been told that if they found no acts of counseling and procurement were committed in the latter parish, but did find such acts had been committed in another parish, they should so report and find no verdict.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1703–1706; Dec. Dig. §§ 737, 791.*]

4. WITNESSES (§ 326*)—IMPEACHING IMPEACHING WITNESS.

Refusal to permit defendant to impeach a material witness for the prosecution testifying for the first time in rebuttal of evidence adduced by defendant, which evidence was offered to contradict and impeach the sole witness by whom defendant was directly connected with the crime, was reversible error.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 1174; Dec. Dig. § 326.*]

5. CRIMINAL LAW (§ 31*)—INCONSISTENT DEFENSES.

Defendant, on a prosecution for being an accessory before the act, cannot occupy the inconsistent position of denying the procurement, and at the same time contending that he repented and countermanded it.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 31.*]

6. CRIMINAL LAW (§ 73*)—ACCESSORY BEFORE THE FACT—COUNTERMANDING ORDER.

Evidence for defendant on a prosecution for being an accessory before the fact to a mur-

der, which was committed by two men, both of whom, if either, had been counseled and incited by him to commit the crime, that he had countermanded his order with one of them could be of no avail, in the absence of evidence that he had countermanded it with the other.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 73.*]

7. CRIMINAL LAW (§ 413*)—EVIDENCE—SELF-SERVING DECLARATIONS.

Evidence, on a prosecution for being an accessory before the fact to a murder, that on the day of the murder defendant had said he did not wish deceased harmed is evidence of a self-serving declaration.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 928–935; Dec. Dig. § 413.*]

Appeal from Twenty-Fifth Judicial District Court, Parish of Tangipahoa; Robert S. Ellis, Judge.

Ben Kinchen appeals from a conviction. Reversed and remanded.

W. B. Kemp, Thomas P. Sims, Alonzo P. Gill, and Chandler C. Luzenberg, for appellant. Walter Guion, Atty. Gen., W. H. McClendon, Dist. Atty., and Morphy & Miller (R. G. Pleasant, of counsel), for the State.

PROVOSTY, J. The defendant, Ben Kinchen, was indicted, tried, and convicted on the charge of having been an accessory before the fact to the murder of John O. Breland by Garfield Kinchen and Avery Blount.

Section 785, Rev. St., provides that:

"There shall be no crime known under the name of murder in the second degree, but on trials for murder the jury may find the prisoner guilty of manslaughter."

And section 972, Rev. St., provides that the punishment of the accessory shall be the same as that of the principal.

In State v. Thomas, 50 La. Ann. 148, 23 South. 250, and other cases it was held by this court that the judge must in all cases of murder, even in the absence of any request to that effect from the defendant, charge the jury that they may bring in a verdict of manslaughter.

In the instant case the defendant contends that this charge should have been given, even though no request was made for it, because the punishment of murder and of accessory before the fact is the same, and hence the two crimes are the same, and, as a consequence, the same charge should be given upon the trial for both.

We do not agree with that view. The Legislature has had no intention by section 785 to obliterate the distinction between murder and manslaughter; but simply to classify with manslaughter the crime known at common law as murder in the second degree. The manifest intention was to say that in all those cases of murder which at common law would have been murder in the second degree—i. e., cases of merely imputed malice—the jury may find the prisoner guilty of manslaughter. If the intention had been to obliterate the well-recognized distinction between murder and manslaughter, the several statutes recognizing the two crimes as distinct and different, and denouncing a widely different punishment for them, would have been taken off of the statute book. To the legal mind, the distinction between willful murder, or murder in the first degree, and manslaughter, is as clear and broad as between murder and larceny; and, to the legal mind, to say that in a case of assassination the jury may find manslaughter is as contradictory and absurd as to say that in a case of murder the jury may find larceny. The statute does, however, in explicit terms say that on trials for murder the jury may find manslaughter; and the courts have had no choice but to apply the statute as it is written. In like manner, if a statute said that on trials for murder the jury might find larceny, the court would have no choice but to enforce the statute as written. But the courts are not required to carry the statute beyond its terms, and, not content with advising juries that they may stultify themselves to the extent of finding manslaughter

in a case where the facts are contradictory of manslaughter, go on a step further and advise them, beyond the express terms of the statute, that they may stultify themselves even to a greater extent by finding for manslaughter in a case of accessory before the fact. A charge of murder may, in a sense, be said to include that of manslaughter, on the principle of the greater including the less; but a charge of accessory before the fact not only does not include that of manslaughter, but is in principle exclusive of it. "There cannot be an accessory before the fact to manslaughter, for the offense, in its nature, cannot be premeditated." 1 Hale, 615; Archbold's Crim. Proc. and Pl. (Waterman's Notes, 6th Ed.) vol. 1, p. 14. We conclude that the judge properly abstained from giving the charge.

Defendant's next contention is that, inasmuch as the only acts of counseling and procurement sought to be proved against him are said by the only witness who testified to them to have been committed in the parish of St. Helena, the court of that parish alone had jurisdiction of his case. The judge says, in his per curiam, that as the defendant was seen in the company of the murderers near the scene of the crime within one hour of its commission, the question of whether there had been any counseling and procuring by the defendant within the parish of Tangipahoa was left to the jury. This was the proper course if the jury were at the same time informed that in case they found no acts of counseling and procurement to have been committed within the parish of Tangipahoa, but did find that such acts had been committed in another parish, they should so report and abstain from finding any verdict. The record does not show that any instructions were given in that connection. As there will have to be another trial, we will add that the contention that an accessory before the fact cannot be tried in a parish other than that in which the acts of counseling and procuring were done, is well founded. To that effect was the common law. 1 Whart. Crim. Law, par. 287; 1 Am. & Eng. E. of L. 271; State v. Moore, 26 N. H. 448, 59 Am. Dec. 354. True, the courts have held that the common law was changed in that respect by statute (7 Geo. IV, c. 64, § 9), adopted in this country by most of the states, including Louisiana (section 1058, Rev. St.; Arch. Crim. Proc. and Pl. [Waterman's Notes, 6th Ed.] p. 15; 12 Cyc. 238); but that statute stands in opposition to article 9 of the Constitution of this state, according to which "Trials shall take place in the parish in which the offense was committed." It can therefore have no operation. For the same reason the statute which gives jurisdiction over crimes committed within 100 yards of the boundary of the parish for which the trial court is sitting has been held to be null. State v. Montgomery, 115 La. 155, 38 South. 949. It is well settled that the situs of the crime of accessory before the fact is the place where the acts of counseling and procuring were done. 12 Cyc. 208.

Bill of exception No. 21, reads:

"Be it known and remembered that, on the trial of the above case, the state had introduced one Walter Averett, who had testified that, on the night before the killing of the deceased, about dark, he had heard the defendant at the Little River depot say to and urge one Avery Blount and Garfield Kinchen to murder the deceased (and this was the only witness who testified to anything said by the defendant that might be construed as counseling or consenting to the murder of the deceased).

"Now, be it remembered that, on behalf of the defendant, a witness, Elmour Stewart, did testify, and the wife of the said witness, Mrs. Elmour Stewart, did testify, that at the time (about dark) the said witness Walter Averett had sworn he heard the defendant urge and counsel Avery Blount and Garfield Kinchen to kill and murder the deceased, the said Walter Averett was not at the place—i. e., the Little River depot—where he claimed to have heard the defendant so urge the death of the deceased, but he, the said Walter Averett, was at his (Walter Averett's) house, at least a mile distant

from the said depot; that they reached the said house a little after sundown, about dark; that Walter Averett was there when they arrived; that they remained until half past 9 or 10 o'clock; that Walter Averett was there all the time they were there.

"And be it further remembered, that, after the defendant had closed his case, the state offered in rebuttal the witness Rob Rogers, who had not previously testified in the case, and who testified that, on the day in question (after sundown), he, the witness, was with Elmour Stewart at least half a mile from Walter Averett's house; that, when Elmour Stewart left him, it was too dark for him (Rogers) to see to load his wagon; that Elmour Stewart left walking and had no horse.

"And be it remembered that, for the purpose of impeaching this witness, counsel for the defendant asked this witness on cross-examination if the witness had not stated the evening before he testified, in a conversation with the defendant Kinchen, in the presence of W. B. Kemp and T. P. Sims at the parish jail, that he (the witness) did not know why he had been summoned; that it was about Elmour Stewart, but that Elmour Stewart left him (the witness) in plenty time to reach Walter Averett's house before sundown. And the witness answered 'No' to the question, and denied he had ever made such a statement.

"Now, be it further remembered that, after the state had closed its case, the defendant, through his counsel, offered to contradict this witness Rob Rogers, and tendered W. B. Kemp and T. P. Sims as witnesses to that effect, and to testify that Rogers did make the statement at the time and place set forth in the question—that he did not know why he had been summoned, that it was about Elmour Stewart, but that Elmour Stewart left him in plenty of time to reach Walter Averett's house before sundown. And the court refused to admit this testimony and to permit the witness for the defendant to be sworn.

"And the defendant makes the stenographic notes taken at the time, and the reasons of the court contained in said notes, a part of this bill.

"And after tendering this bill to the district attorney for inspection, the defendant now hands it to the court to be signed."

"At the request of Mr. Chandler C. Luzenberg, one of the counsel for defendant, I permitted this document to be filed on November 29, 1909. Upon examination it seems to have been filed November 20th, at which time I was in the parish of Livingston, holding a session of the court. Mr. Luzenberg was not of counsel or present at the trial, and appeared first at the argument of the motion for a new trial. No such bill as this was reserved at the time. The bill No. 21 which I have signed this day, bearing date Monday, November 15th, at its caption, represents all that transpired. It will be observed that the district attorney has indorsed on this paper the words 'This document does not belong in the record,' and has signed said document officially.

"Robt. S. Ellis, District Judge.
"December 9, 1909."

"Filed November 20, 1909.
"A. R. Lewis, Clerk of Court."

Indorsement:
"No. 21.
"This document does not belong in record."

The document made part of this bill reads as follows:

"State of Louisiana v. Ben. Kinchen.   1,619.
~~"No. 21.~~
~~. . . . . . . . . . . and remembered on the trial of the above entitled and numbered case the following transpired.~~ (N. B. These erasures appear in the original.)

"Mr. Sims: The state having closed its rebuttal testimony, the defendant now offers to introduce the testimony of Robert Holton, whom the court has called, and who is absent, and W. B. Kemp, Thomas P. Sims, Mr. A. R. Lewis, clerk of the court; and the record, conveying Walter Averett's property to a man by the name of W. W. Sullivan, for the purpose of attacking the credibility and impeaching the testimony of Walter Averett in rebuttal; and the testimony of Rob Rogers, offered in rebuttal; and the testimony of W. W. Sullivan, offered in rebuttal; also for the purpose of attacking the credibility and impeaching the testimony of Henry Averett, who was sworn by the state in rebuttal; also Will Reed, whose testimony we expect to impeach, and also to impeach and contradict the testimony of W. W. Sullivan, who was sworn by the state, in rebuttal. We now tender these witnesses, and ask the court's permission to swear them before the jury.

"By the Court: The court refuses the request, and rules that the defendant is not entitled to put on testimony, as the state closed entirely, under the circumstances of this case, and for the reasons to be fully set forth in the court's per curiam. This note, and all the testimony set out to be introduced, and statement of the court have been taken out of the presence of the jury.

"By the Court: The court now states that this case has been on trial since Wednesday, November 3, 1909; that the state closed on Monday following, which was the 8th; the defendant then had numerous witnesses, and occupied the time of the court until Saturday, November 13th, at about 11:30 o'clock a. m., that these matters upon which the defendant now desires to offer testimony were all brought out on the direct examination and cross-examination of the witnesses of the defendant, and that only rebuttal testimony by the state has been permitted to be offered; that no objection has been made by the defense to any testimony offered by the state in rebuttal, on the ground that it was not in rebuttal of the testimony offered by the defendant.

"Mr. Sims: The defendant now excepts to the ruling of the court, and asks the court's permission to incorporate in his bill of exception the date of the summons issued to W. W. Sullivan, Dade Stevens, and Henry Averett.

"By the Court: If you desire it the court permits it to go in as to the witness named by you.

"By the Court: Let the dates on those summonses named by the defendant be made part of the bill of exceptions, or let certified copies of the original summons, with the date of issuance thereon and the name of the witnesses, be attached to and made a part of this bill."

The trial judge was under the impression that the bill of exception set forth in the first of the foregoing documents had not been reserved, and that the said document had not been prepared and filed at the same time as the other bills of exceptions in the case, and that it was the second and not the first of these two documents which constituted defendant's bill of exception on the point in question; and that the first of these documents was subsequently gotten up by an afterthought.

In all this, our Brother was manifestly laboring under a misapprehension. The bill was duly reserved, as the stenographer's notes, made part of it, show; and the date of the filing of said first document shows that it was prepared and filed at the same time as all the other very numerous bills of the defendant. In the case of State v. Miller, 51 South. 190,[1] cited by the state, the record did not show, as it does in this instant case, that a bill had been reserved, and that the judge was mistaken in the statement contained in his per curiam.

We think it is equally clear that the exclusion of said evidence was error; and since its effect, if believed by the jury, would have been to discredit the witness who had discredited the witnesses whom defendant had offered for the purpose of contradicting and impeaching the sole witness by whom it is contended the defendant had been directly connected with the crime, we think the error is prejudicial and vitiates the verdict.

[1] 125 La. 254.

Bill of exception No. 12 has reference to evidence which the state was allowed to introduce in rebuttal touching the killing of one Joe Averett by the defendant. The judge says in his per curiam:

"Ben Kinchen, while on the stand in his own behalf, testified that on January 19th he shot John and Walter Averett and killed Joe Averett; that Joe Averett struck him with a spade first, and then he shot Joe Averett; and that John, about the same time, struck him with a shovel. The evidence objected to seemed to me to be rebuttal."

Accepting the judge's statement of the matter, as we must do, the ruling was correct.

The defendant next complains that he was not allowed to prove that, on the day of the murder, he had said to Garfield Kinchen that he (defendant) did not wish any of the Brelands or Averetts, or any of their kindred, harmed. The purpose was to show that the defendant had repented, and had countermanded the counsels theretofore given by him. The evidence was ruled out as being a mere self-serving declaration. And the argument is now made in behalf of the state that repentance and countermand presupposes an admission of the counseling and procuring, whereas the defendant in this case denies that he had any connection whatever with the crime. We agree with the view that a defendant cannot be allowed to occupy the inconsistent position, as the defendant in this case attempts to do, of denying the procurement, and at the same time contending that he repented and countermanded it. And, in the second place, even if such paltering were allowable, the charge against the defendant is, and the evidence shows, that the crime was committed by two men—Garfield Kinchen and Avery Blount—and that both of them, if either, had been counseled and incited by defendant to commit the crime. Under these circumstances, of what avail could it be to defendant to show that he had countermanded his order with one of these two men, unless he at the same time offered to

show that he also countermanded it with the other man? And, moreover, this proffered evidence impresses us, as it did the trial judge, as being more in the nature of a self-serving declaration than a bona fide counter-mand. True, the evidence might tend to disculpate the defendant by showing absence of malice on his part, but it is not for that reason any the less a self-serving declaration, and inadmissible.

"Self-serving declarations are excluded not because they might never contribute to the ascertainment of the truth, but because, if received, they would most commonly consist of falsehoods fabricated for the occasion." 12 Cyc. 427.

Judgment and verdict set aside, and case remanded to be proceeded with according to law.

MONROE, J. I concur in the decree, but dissent from the views expressed in the opinion on the last bill considered.

### On Application for Rehearing.

LAND, J. The record in this cause has been confused by the inclusion of two bills of exception covering the same subject-matter, and bearing the number "21." For convenience we shall designate the bill first filed as No. 1, and the other No. 2, and for the purposes of the discussion shall give to No. 2 no force or effect, except as to the facts therein admited by the trial judge.

It appears from the recitals of bill No. 1 that when the prosecution closed in rebuttal the defendant offered several witnesses to impeach the testimony and credibility of Walter Averett, Rob Rogers, W. W. Sullivan, Henry Averett, and William Reed, all sworn in re-buttal in behalf of the prosecution; that the evidence of the witnesses so tendered by the defendant was ruled out by the trial judge because the state had closed its case. In the per curiam of bill No. 2, the trial judge states that bill No. 1—

"truly represents all that occurred at the trial, except that, while on the stand witness Robert Rogers was asked if on the day previous at the jail in Amite City, La., he did not make statement to Ben Kinchen in the presence of his attorneys, W. B. Kemp and Thomas P. Sims, at variance with his sworn statements on the witness stand, to which he answered in the negative."

The trial judge adds that at the time Rogers was not put on his guard that the defendant would contradict him, nor was any notice given to the judge of defendant's intention to offer surrebuttal testimony.

That the testimony offered by the defendant to impeach the credibility of Rogers, who had testified in favor of the prosecution in rebuttal, on a material point, was pertinent and relevant is not disputed.

The result is that the trial judge refused to permit the defendant to impeach a material witness for the prosecution testifying for the first time in the cause in rebuttal of evidence adduced by the defendant.

We cannot approve a ruling which would in every criminal case leave it discretionary with the trial judge to refuse to permit the accused to impeach the witnesses for the prosecution called to rebut the evidence adduced in behalf of the defendant.

It is the duty of this court to see that every person accused of crime shall not be deprived of the legal right to introduce relevant evidence in his defense.

It is therefore ordered that the application for a rehearing be refused.