Wessie Moore *v.* Robert M. Lowe, *Sheriff, etc.*

(No. 8074)

Submitted February 19, 1935. Decided March 12, 1935.

166

KENNA, JUDGE, dissenting.

*Walter Mahan* and *Abraham Pinsky,* for plaintiff in error.
*J. Campbell Palmer, III,* and *Leo A. Coleman,* for defendant in error.

MAXWELL, JUDGE:

Robert M. Lowe, respondent, sheriff of Brooke County, prosecutes error to an order of the circuit court of said county discharging from his custody, on writ of habeas corpus, Wessie Moore, relator.

She stands convicted of voluntary manslaughter and is being held pending disposition by the trial court of her motion in arrest of judgment. The conviction resulted from a trial under an indictment charging her as accessory before the fact to the murder of her husband, James Moore. The jury specifically acquitted her of murder. Cleve Holley, the slayer, confessed to first degree murder and was sentenced to life imprisonment.

It is the contention of the relator, approved by the circuit court, that under an indictment as accessory before the fact to murder there can not be a conviction of voluntary manslaughter; that such an indictment is not inclusive of the lesser offense.

The right of relator to have this matter determined in habeas corpus was challenged by the respondent on the theory that relator's proper course would be upon writ of error, if and when judgment be entered on the verdict. Irregularities are subjects for review; illegalities, for habeas corpus, where personal liberty is at stake. *Ex Parte Mooney,* 26 W. Va. 36, 40, 53 Am. Rep. 59; *Ex Parte Barr,* 79 W. Va. 681, 91 S. E. 655. If relator were being unjustly deprived of her liberty, it would not be because of irregularity in the trial but because of an illegal verdict. She has the right to have the matter decided in habeas corpus.

An accessory before the fact is not the principal actor in the crime, nor present at its commission, but is one who, in some manner, procures or instigates its performance. IV Blackstone's Commentaries, p. 35; 1 Wharton's Criminal Law (12th Ed.), sec. 263; 1 Ruling Case Law, p. 144; *State v. Ellison*, 49 W. Va. 70, 38 S. E. 574; *State v. Roberts*, 50 W. Va. 422, 40 S. E. 484.

One accused as accessory before the fact must be indicted as such and not for the offense committed by the actual perpetrator of the crime—the principal in the first degree. *State v. Powers*, 91 W. Va. 737, 747, 113 S. E. 912; *State v. Lilly*, 47 W. Va. 496, 35 S. E. 837. But an accessory before the fact, though thus indicted and prosecuted, is punishable in the same manner as a principal in the first degree. Code, 61-11-6.

Not directly involved here, but having effective bearing on the issue, is the proposition of whether a person may be convicted as accessory before the fact to voluntary manslaughter.

It was the common law rule that in manslaughter there could be no accessories before the fact. The holding seems first to have been made in *Bibithe's Case* (1597), 76 English Reports (Reprint) 991, where it was determined that a slayer having been convicted of voluntary manslaughter instead of murder, the accessory before the fact should be discharged. That case is cited in I Hale's Pleas of the Crown 437 in support of the statement: "In manslaughter there can. be no accessories before the fact, for it is presumed to be sudden, for if it were with advice, command, or deliberation, it is murder and not manslaughter, and the like of *se defendendo*." Following this view Sir William Blackstone states: "In manslaughter there can be no accessories before the fact; because it must be done without premeditation." IV Blackstone 191. Whether that concept still obtains in England is not clear from cases available. Illustrative: *Regina v. Taylor* (1875), 13 Cox's Crim. Law Cases 68.

Some of the American courts have followed the principle of *Bibithe's Case*. *State v. O'Shields*, 163 S. C. 408, 161 S. E. 692; *State v. Kinchen*, 126 La. 39, 52 So. 185; *Jones v. State*, 13 Tex. 168, 62 Am. Dec. 550; *Boyd v. State*, 17 Ga. 194. But

not all of the courts have adopted that view. *Thomas* v. *State,* 73 Fla. 115, 74 So. 1; *State* v. *Hermann,* 117 Mo. 629, 23 S. W. 1071, 1073; *People* v. *Newberry,* 20 Cal. 440. Cf. *State* v. *McVay,* 47 R. I. 292, 132 A. 436, 44 A. L. R. 572 (annotation appended), and I Bishop's Criminal Law (9th Ed.), sec. 678. The matter is clearly discussed in Wharton's Criminal Law (12th Ed.), secs. 269 and 276. In the latter section the author says:

"Under the old law, the defendant was first convicted, and then the accessory was charged with being accessory to the offense which the conviction covered. But now that instigation is a substantive offense, it must be remembered that the offense of the instigator is not necessarily of the same grade as that of the perpetrator. The instigator may act in hot blood, in which case he will be guilty only of manslaughter, while the perpetrator may act coolly, and thus be guilty of murder. The converse, also, may be true: the instigation may be cool and deliberate, the execution in hot blood by a person whom the instigator finds in a condition of unreasoning frenzy. A person desiring coolly to get rid of an enemy, for instance, may employ as a tool someone whom that enemy has aggrieved, and who is infuriated by his grievance. Hence an accessory before the fact (or, to adopt the terms of recent codes, an instigator) may be guilty of murder, while the principal (or perpetrator) may be guilty of manslaughter; or the accessory before the fact (instigator), acting in hot blood, may be guilty of manslaughter, while the perpetrator (principal), acting with deliberate malice, may be guilty of murder." The author uses "instigator" as synonymous with "accessory before the fact." *Vide,* sec. 268.

The common law requirement that the principal be convicted before prosecution of the accessory could proceed, has been changed in this state by statute. Code, 61-11-7. An accessory, before or after the fact, may now be prosecuted whether the principal has been brought to justice or not. In this sense, at least, the crime of accessory before the fact becomes in this state a substantive offense. It, of course, remains contingent upon the fact of the commission of the

principal offense. A person in heat of passion, and, on impulse of anger, may prompt A to kill B. Acting with deliberation, A performs the act and becomes a murderer; the instigator (accessory before the fact) is guilty of voluntary manslaughter. The controlling element of A's crime is malice, of the instigator's, passion.

The record of the trial of relator is not before us. *Non constat* but that she acted in hot blood in inciting Cleve Holley to kill her husband, and that there was no opportunity for her to retract after the incitement was given. On the other hand, if she did not act in heat of passion, so that there is no logical nor technical basis for the manslaughter verdict, may such verdict nevertheless be upheld under principles next discussed?

A conviction of manslaughter under a murder indictment will not be set aside on the ground that the evidence is compatible only with murder or innocense. II Michie on Homicide, sec. 342; Wharton on Homicide (3d Ed.), sec. 653; *State* v. *Prater,* 52 W. Va. 132, 143, 43 S. E. 230.

In the light of the fact that, under settled law, a manslaughter verdict against a principal will be upheld (if there was no prejudicial error at the trial), though the evidence clearly demonstrated that he was guilty of murder, the query arises as to whether a person tried as accessory before the fact to murder, guilty of murder if guilty of anything (the elements of manslaughter not being present), may be heard to complain because he received merely a manslaughter conviction.

If a person may be convicted as accessory before the fact to voluntary manslaughter, and we are of opinion that such a conviction may be proper *(supra),* there would seem to be very narrow basis for the position that he can not be convicted of voluntary manslaughter as accessory before the fact to murder.

In homicide cases, verdicts of lesser degrees of guilt are upheld, where the evidence establishes a higher offense and does not present the elements of the lesser, since a convicted person can not be heard to complain of an error in his favor. Because jurors, actuated by compassion or otherwise, in a

given instance, have failed to do their whole duty and have compromised with justice by rendering a verdict for a lower degree of guilt than should have been found, it by no means follows that the accused should go free. In strict logic, a conviction of manslaughter, presupposing heat of passion and excluding malice, perhaps can not be justified where the evidence clearly discloses malice and excludes passion. But the lesson has been taught by experience that it is necessary to uphold such lesser verdicts for the reason that, if not upheld, persons guilty of serious crime often would go unpunished. In those instances there is presented a matter of practical administration of criminal law and not of strict logic.

The offense of accessory before the fact does not rest alone upon instigation, however much there may be. Dual elements must concur; first, the incitement or encouragement, and second, the consummation by the principal offender. When the principal has acted—and only then—does the accessory before the fact become amenable to the law. *State* v. *Ellison,* 49 W. Va. 70, 38 S. E. 574. It is on that basis that an accessory before the fact may be prosecuted in the county where the crime was completed. Code, 61-11-7; *Weil* v. *Black,* 76 W. Va. 685, 693, 86 S. E. 666; *State* v. *Overholt,* 111 W. Va. 417, 162 S. E. 317.

If an instigated crime was murder, and the instigation be proved, the accessory stands before the law *prima facie* a murderer; but, as stated, in conceivable circumstances, he may have acted in heat of passion. This, he may show. The accessory is entitled to neither greater nor less consideration than the principal. Their status is substantially the same. If a verdict against the principal (murderer) for voluntary manslaughter is upheld by the law, when, logically, he should have been convicted of murder or acquitted, no reason is perceived why the same principle should not apply to the accessory.

The suggestion is made that though voluntary manslaughter is included in an indictment for murder, such lesser offense is not included in an indictment for accessory before the fact to murder. Our answer is that inasmuch as under the law of

this state the guilt of an accessory before the fact is not contingent upon the conviction of the principal, and the accessory is punishable as a principal, the distinction between indictments for the two offenses, respectively, in large measure loses significance. In effect, though not actually, an indictment for accessory before the fact to murder places the accused on trial for murder. The difference between the two situations is theoretical rather than real.

> "At common law an accessory cannot be guilty of any other or higher grade of crime than that of which the principal is also guilty. And generally the guilt of the principal in the second degree, or of one who is present aiding and abetting, is measured by the intent of the one actually committing the offense. If he enters into the commission of the offense with the same intent and purpose, then his offense will be of the same degree as that of the actual doer. But it is now generally held that principals, accessories, and aiders or abettors may be convicted of different grades or degrees of crime, according to their respective intents. This has often been held to be true in homicide cases, for example. So it has been held that an accessory, or principal in the second degree, or an aider and abettor, in a homicide may be found guilty of murder in a higher or lower degree than the actual perpetrator of the crime, or may be convicted of murder though the perpetrator has been convicted of manslaughter, or of manslaughter though the perpetrator has been convicted of murder." I Brill, Cyclopedia Criminal Law, sec. 257.

In the light of the authorities cited, and, for the reasons stated, we have reached the conclusion that the learned circuit judge was in error in ordering the discharge of the relator. We therefore reverse the judgment and dismiss the proceeding.

*Reversed; dismissed.*

KENNA, JUDGE, dissenting:

I cannot concur with the result reached by the majority of the court in this case, nor with the reasoning by which that result is arrived at as stated in the opinion. As deferentially

as the fact of disagreement will permit, I wish to point out the reasons for my position.

The majority opinion states, speaking of the status of principal and accessory before the fact in West Virginia, ''* * * the distinction between the indictments for the two offenses, respectively, in large measure loses significance. In effect, though not actually, an indictment for accessory before the fact of murder places the accused on trial for murder.'' I respectfully disagree with these statements. In West Virginia, the difference between principals and accessories has never been abolished by statute, and, so far as I have been able to find, has always been drawn in our decided cases. As recently as the case of *State* v. *Powers*, (1922) 91 W. Va. 737, 746, 113 S. E. 912, Judge Lively, in speaking for this Court on the basis of previously decided West Virginia cases, states:

> ''It has been said: 'The distinction between principals and accessories before the fact is in most cases a distinction without a difference, and often requires nice and subtle verbal refinements to express it. It is supposed to have originated at time when criminal lawyers puzzled their wits and taxed their ingenuity to invent metaphysical shades of distinction, such for instance as that between principals and accessories at the fact, which once existed, but is now exploded. The distinction between principals and accessories before the fact is fast following its kindred technical refinement.' *State* v. *Poynier*, 36 La. Ann. 572. Some of the states have provided by statute that all parties to' a felony, either before or at the fact, shall be principals; and under such statutes all parties, who at common law would be accessories before the fact to larceny, become principals, and may be convicted as such. California, Minnesota, Montana, Pennsylvania and Texas have passed such statutes. However, in this state we still recognize the distinction between accessories and principals, and an accessory to be convicted must be indicted as such.''

It is undoubtedly settled law in West Virginia that an accessory must be indicted as an accessory, and cannot be indicted as a principal. *State* v. *Roberts*, 50 W. Va. 422, 40 S. E. 484; *State* v. *Lilly*, 47 W. Va. 496, 35 S. E. 837; *State*

v. *Cremeans*, 62 W. Va. 134, 57 S. E. 405. This being so, to my mind it necessarily follows that a person indicted as accessory cannot be convicted as principal. Here, the state of facts alleged in the indictment precludes all possibility that the defendant should be guilty of voluntary manslaughter. She has been convicted as principal of an offense for which, under our cases and under the state of facts alleged in the indictment, she could not have been indicted. Nor do I believe that the case of *State* v. *Prater*, 52 W. Va. 132, 43 S. E. 230, relied upon in the majority opinion, is logically of significance in solving the difficulty. In that case, it was held that a conviction for voluntary manslaughter under an indictment for murder would not be set aside where the proof showed that the accused could be guilty of no other crime than murder. The question involved turned entirely upon the state of the evidence, and the court did not hesitate, in so far as the legality of the verdict was concerned, to state: "Logic is utterly powerless to extract the verdict from its inconsistencies." The court, in effect, simply said that the accused could not be heard to complain since the proof showed him guilty of murder. Hence, it is seen that the case did not turn in the least upon the question of *error*, that having been admitted, but that it was decided upon the proposition that there was no prejudice. I respectfully say that I do not see how a case where the error is admitted, and reversal refused because no prejudice is shown from the proof, can be used as authority except upon the proposition that where no prejudice appears, a reversal will be refused in spite of error. The *Prater* case itself is open to question as far as my mind can see, because the lack of prejudice upon which the decision turns, is based upon the assumption that the jury should have found the defendant guilty of a higher crime. Of that higher crime the jury had acquitted him; and the effect of the case is to punish the defendant upon the court's own conclusion from the evidence that a jury had passed upon. But, conceding the validity of the holding in the *Prater* case, to my mind it certainly can have no application here for the simple reason that the *Prater* case hinged upon the proof, and in this case we have no proof before us. Even on the basis of the *Prater*

case, we have no way of telling whether the verdict here rendered was prejudicial to this defendant or not.

No question of a variance between the indictment and the verdict was presented in the *Prater* case, because there is express statutory authority for a verdict of manslaughter upon an indictment for murder. There is no statutory authority in this state for a verdict convicting as principal upon an indictment as accessory before the fact. No case that I have been able to find by exhaustive effort holds that it may be done in the absence of statutory authority.

There is authority holding expressly that it may not be done. *The King* v. *Gordon,* 1 Leach 515, 1 East P. C. 352, 168 Eng. Rep. 359; *Casey* v. *State,* 49 Neb. 403, 68 N. W. 643; 1 Bish. Cr. Law, (9th Ed.), sec. 803. See also *Meister* v. *People,* 31 Mich. 99, 111.

To argue that this defendant cannot be heard to complain of a conviction of voluntary manslaughter because, perchance, she might have been convicted of being accessory before the fact to murder is, without proof before us, to prejudge her for the sake of argument.

The common law doctrine to the effect that there could be no accessory before the fact to the crime of manslaughter has undergone many contortions of expression, and is, apparently, subject to some later modification even in the absence of statute. It is submitted that the doctrine in its essence is based upon the supposition that there can be no procurement nor incitement of an offense, the essential element of which is that the perpetrator acted under such hot blood as temporarily to dethrone his reason. If this be true, then the common law doctrine, it would seem, should be restricted to voluntary manslaughter. So restricted, it would appear to me to be sound law in West Virginia today to say that there can be no accessory before the fact to voluntary manslaughter. It is difficult for me to believe that a person, not present at the time the offense is committed (for then under our statute and at later common law he would be a principal), could have the self-possession necessary to weigh the chances and to decide, through fear, through cunning, or what not, that procuring another to commit a crime would be preferable to

undertaking the commission of the crime himself, can be said to act in such hot blood as to dethrone reason, and reduce the crime from accessory to murder to accessory to manslaughter. But the question of whether there may be accessories before the fact to manslaughter, as stated in the majority opinion, is not the question directly involved in the decision of this case; and for that reason, the conflicting cases on the subject need not be analyzed. I respectfully submit, however, that the cases used in the majority opinion to illustrate that the common law doctrine has, in certain jurisdictions, been changed by the courts in this respect, fall short of that purpose. In *Thomas* v. *State*, 73 Fla. 115, 74 So. 1, the accused was indicted as accessory before the fact to murder and was convicted as accessory before the fact to manslaughter. The conviction was sustained under a Florida statute providing, in effect, that any person indicted for a felony and acquitted of a part of the crime charged might nevertheless be convicted of any residue of the crime which appeared to the court to be substantially charged by the indictment. *State* v. *Hermann*, 117 Mo. 629, 23 S. W. 1071, is based expressly upon a Missouri statute doing away with the distinction between principals and accessories before the fact. *People* v. *Newberry*, 20 Cal. 439, turns upon a California statute which abolished the distinction between principals in the first and second degrees and between them and accessories before the fact. *State* v. *McVay*, 47 R. I. 292, 132 Atl. 436, 44 A. L. R. 572, cited by way of comparison in the majority opinion, is a case holding that there may be accessories before the fact to involuntary manslaughter.

The suggestion is made that the holding here is necessary to further the practical administration of the criminal law. I say with all deference that such a consideration is a matter for the legislature and not for the courts. So far as I have been able to find there is no authority for viewing this question in that light and all of the cases dealing with the distinction between principals and accessories consider the matter as a question of fundamental substantive law. See the discussion of Chief Justice Marshall on a kindred question in "Opinion on the Motion to Introduce Certain Evidence in the

Trial of Aaron Burr, for Treason, Pronounced Monday, August 31.'' 4 Cranch 470, 494.

In my opinion the common law distinction between principals and accessories has never been abolished in West Virginia and each remains, under our law, a substantive offense. This being so, I do not agree that the two offenses can be treated interchangeably for the purpose of either indictment or conviction. I cannot here attempt exhaustively to discuss the cases on this question, but references to many of them will be found conveniently gathered in a full note to *State* v. *Whitman*, 14 Ann. Cas. 309, 311.

Believing that the verdict before us constituted an attempt to convict the accused of a different substantive offense from the one upon which she stood indicted, I am of the opinion that the learned trial judge reached the correct conclusion and that the judgment should be affirmed.