# CHARLESTON.

## STATE v. ROBERTS.

Submitted November 23, 1901.   Decided December 7, 1901.

1. INDICTMENT JOINT—*Separate Trials.*

    Upon a joint indictment for felony against several persons any defendant may elect, under section 8, chapter 159, Code, to be tried separately but is not entitled to demand to be tried jointly. (p. 424).

2. INDICTMENT—*Co-Defendant—Conspiracy.*

    Where a person is indicted jointly with others as principal in the commission of a robbery, it is error to instruct the jury that in case they believe from the evidence beyond a reasonable doubt that the defendant on trial conspired with his co-defendants or any one of them to commit the offense, they should find him guilty, although he may not have been present at the time the robbery was committed.   (p. 424).

3. CONSPIRATOR—*Accessory Before the Fact.*

    A conspirator who is absent at the time the felony is committed, taking no part in the actual commission of the offense, is an accessory before the fact and can only be indicted and punished as such.   (p. 425).

4. ACCESSORY—*Indictment Jointly—Separately.*

    Such accessory may be indicted either with the principal or separately, but in either case he must be indicted as accessory and not as principal.   (p. 425).

5. INDICTMENT,—*Principal—Accessory.*

    An accessory before the fact to a felony cannot be convicted on an indictment against him as principal.   (p. 426).

6. INDICTMENT—*Record of Finding Essential.*

    The record of the finding of the grand jury is essential, as the only legal proof of the finding of the indictment, and without such record the indictment cannot be maintained.   (p. 430).

Error to Circuit Court, Mingo County.

Jacob Roberts was convicted of robbery, and brings error.

*Reversed.*

F. H. EVANS and J. L. STAFFORD, for plaintiff in error.

ROMEO H. FREER, ATTY. GEN., and ALEX DULIN, for the State.

McWHORTER, JUDGE:

This is a prosecution upon an indictment in the circuit court of Mingo County for the robbery of B. C. Bateman against Jacob Roberts indicted jointly as principal with four others named, tried at the May term, 1901, of said court as to said Roberts, a verdict of guilty was rendered by a jury and judgment entered thereon, the defendant being sentenced to a term of years in the penitentiary. The defendant procured a writ of error and his first assignment is that the court erred in refusing to grant him a continuance of the case on the ground of the absence of material witnesses. The absent witnesses being Elijah Mounts, Sampy Hatfield, Bub Elswick and a Mrs. Johnson sister of the defendant Roberts, all of whom seem to have been summoned except the sister. It appears that Elijah Mounts had met with a railroad accident a few days before the case was called for trial wherein he had lost both his legs and of course was unable to attend. It appears that Mounts was working with others on a raft in the river near to where the robbery occurred. On cross-examination Roberts said that he did not know whether there were other witnesses present that knew the same facts that Mounts knew or not, and that Roberts didn't know what witnesses he had there. On re-direct examination he was caused to say that he had no other witnesses that he could prove the same facts by that he expected to prove by said Mounts. As to the other witnesses, Hatfield lives on the opposite side of the river in Kentucky and James Roberts, brother of the defendant, says he served notice on him to appear as a witness, that he came over on the West Virginia side to be served and said he would attend and that he was a good friend to the defendant. The witness James Roberts was asked whether he had made any effort to get Bub Elswick, he said that he had sent his brother after him, that his brother got him but he got away from him. His brother, Coz Roberts, testified that he had a *subpoena* for Bub Elswick, that he went up about a mile and ahalf above Panther to get him, he brought him to Gray, intending to bring him on to the place of trial, when he said he wanted to talk to Mr. Ried, the hotel man at Gray, he went across the walk and went away somewhere, witness did not know where, he hunted and inquired for him but failed to find him or get any further information about him. Dorcas Johnson, the defendant's sister, was not

summoned. Defendant had notified her that he would have to use her as a witness, but some time before the trial she had gone off and her father nor mother did not know in particular where she was, he supposed her husband knew where she was and he was probably with her. The defendant admitted that he might have stated a short time before the trial that he did not expect to try the case at that term. Evidently from the character of the testimony in support of the motion for a continuance, the trial court was satisfied that the apparent effort made on part of defendant to get ready for trial was simply a subterfuge to get ready for a continuance. "A motion for continuance is addressed to the sound discretion of the court under all the circumstances of the case; and, though an appellate court will supervise the action of an inferior court on such motion, it will not reverse the judgment on that ground, unless such action was plainly erroneous." *State* v. *Harrison,* 36 W. Va. 729, syl. pt. 7; *State* v. *Lane,* 44 W. Va. 730; *Hewitt's Case,* 17 Grat. 627. It is insisted that the court erred in compelling the prisoner to be tried separately when he demanded to be tried jointly with James Roberts, one of the parties with whom he was jointly indicted, the defendants Edmond Murphy and Thomas Hardin having been tried prior thereto, and cites in support of his proposition, section 8, chapter 159, Code, which provides, "If persons jointly indicted elect to be, or are tried separately, the panel in the case of each, shall be made up as provided in the third section of this chapter." This provision entitles the defendant to elect to be tried separately if he so chooses, but not to demand to be tried jointly. In *Curran's Case,* 7 Grat. 619, syl. pt. 6, it is held, "Upon a joint indictment against several, the commonwealth may elect to try them separately." *State* v. *Nash,* 7 Iowa 347; *Cruce* v. *State,* 59 Ga. 83; *Patterson* v. *The People,* 46 Barber (N. Y.) 625.

Defendant claims that court erred in giving instructions Nos. 1, 2 and 3 asked by the State and refusing to give instruction No. 4 asked by the prisoner and by giving instructions 1 and 3 as modified by the court. Instruction No. 1 asked by the State is as follows: "The court instructs the jury that if they believe from the evidence of this case, beyond a reasonable doubt, that the prisoner, Jacob Roberts, and Malan Prater, James Roberts, Thomas Hardin and Edmond Murphy, or any two of them, the prisoner being one, entered into a conspiracy for the purpose of

robbing B. C. Bateman, the party named in the indictment in
this case, of his money, and that in pursuance of said conspir-
acy and agreement Thomas Hardin and Edmond Murphy, they,
or either of them, being armed with a deadly weapon, to-wit, a
loaded gun, assaulted the said B. C. Bateman and put him in
bodily fear, shot and wounded him, and by force took from the
person of the said B. C. Bateman a certain sum of money men-
tioned and described in the indictment in this case, and did fel-
oniously and violently steal, take and carry away said money,
then you should find the prisoner guilty, although the prisoner
may not have been present at the time the money was so taken
from the person of the said B. C. Bateman." This is a joint
indictment against all the defendants named therein as princi-
pals. As stated in Sharswood's Blackstone, Book 4, page 33, "A
man may be principal in an offense in two degrees. A principal
in the first degree is he that is the actor or absolute perpetrator
of the crime; and in the second degree he is who is present, aid-
ing and abetting the fact to be done. Which principals need
not always be an actor immediately standing by, within sight
or hearing of the fact; but there may be also a constructive
presence, as when one commit a robbery or murder and another
keeps watch or guard at some convenient distance. * * * * In
case of murder by poisoning a man may be a principal felon by
preparing and laying the poison, or persuading another to drink
it who is ignorant of its poisonous qualities, or giving it to him
for that purpose, and yet not administering it himself, nor be
present when the very deed of poisoning is committed. And the
same reasoning will hold good with regard to other murders com-
mitted in the absence of the murderer by means which he had
prepared beforehand, and which probably could not fail of their
mischievous effect. As by laying the trap or deadfall for another,
whereby he is killed, letting out a wild beast, with an intent to
do mischief, or inciting a madman to commit murder, so that
death thereupon ensues; in each of these cases the party offend-
ing is guilty of murder as a principal in the first degree. * * * *
An accessory is he who is not the chief actor in the offense, nor
present at its performance, but is some way concerned therein,
either before or after the fact committed." Section 8, chapter
152, Code, provides that, "An accessory either before or after the
fact, may, whether the principal felon be convicted or not, or be
amenable to justice, or be indicted, convicted and punished in

the county in which he became accessory, or in which the principal felon might be indicted. Any such accessory before the fact may be indicted either with such principal or separately." An accessory must be indicted as such whether indicted with the principal felon or separately. In *State* v. *Lilly,* 47 W. Va. 496, (35 S. E. 837), syl. pt. 2, "Under the laws of this State, to convict a person as an accessory to crime he must be indicted and tried as such." And in *Hatchett's Case,* 75 Va. 925, it is held, "An accessory to a felony cannot be prosecuted for a substantive offense, but only as an accessory to the crime perpetrated by the principal felon." *Thornton's Case,* 24 Grat. 657, "An accessory before the fact to a felony cannot be convicted on an indictment against him as principal."

The instruction complained of is given upon the theory that the proof against the defendant is to sustain the charge against him as an accessory and not principal and he not being indicted as an accessory but as principal, the instruction is wrong. The instruction charges the jury that if they find that in pursuance of said conspiracy entered into by all of the defendants or any two of them, the prisoner being one, Thomas Hardin and Edmond Murphy, they or either of them being armed with a deadly weapon, to-wit, a loaded gun, assaulted the said Bateman and put him in bodily fear, and by force took from his person the money described in the indictment, and feloniously and violently steal, take and carry away said money, then they should find the prisoner guilty, although the prisoner may not have been present at the time the money was so taken from the person of the said Bateman. "An accessory before the fact is he that, being absent at the time of the actual perpetration of the crime, procures, counsels, commands, incites, or abets another to commit it." 1 Enc. Pl. & Pr. 66. The crime of accessory before the fact is a particular one. The absence of the accessory at the time and place of the principal offense is an essential element of the crime. Sir Mathew Hale defines the accessory before the fact to be, "One who being absent at the time of the crime committed doth yet procure, counsel, or command another to commit a crime. Wherein absence is necessary to make him an accessory."

Instructions Nos. 2 and 3 given for the State are as follows: No. 2. "The court instructs the jury that they are not required by law to disbelieve a witness who has testified before them in

this case because the general reputation of such witness for truth
and veracity in the neighborhood where he resides has been
proven to be bad, and said witness shown not to be entitled to
credit when on oath, but it is the province of the jury to give
the evidence of any witness who has testified in this case such
credit as the jury may believe, from all the facts and circum-
stances in the case, it is entitled to, the jury being the sole judges
of the evidence in the case as well as the credibility of the wit-
nesses who have testified in this case." No. 3. "The court in-
structs the jury that they are the sole judges of the evidence in
this case as well as the credibility of the witnesses testifying
before them, and in determining the weight to be given to the
evidence of any witness who has testified in this case they have
the right to take and consider the intelligence of such witness,
his or her conduct, appearance and demeanor while testifying,
as well as the interest such witness may have in the result of
the trial, and from all these, and all other facts and circum-
stances in the case, give the evidence of such witnesses such
credit as the jury may believe it entitled to, the jury being the
sole judges of the evidence and the weight thereof, as well as the
credibility of the witnesses who testified in the case," and pro-
pounds the law in relation to the character of witnesses and
the fact that the jury are the sole judges of the evidence in the
case as well as the credibility of the witnesses who have testified.

Instruction No. 4 asked for by defendant is as follows: "The
court further instructs the jury that before they can find the
prisoner guilty, they must be satisfied beyond all reasonable
doubt, from the evidence adduced in this case, that a conspiracy
existed, and that the prisoner, Jacob Roberts, conspired and
confederated with Thomas Hardin and Edmond Murphy in the
commission of the offense charged in said indictment." This
instruction is asked on the theory that the defendant is being
prosecuted as an accessory before the fact, while he is indicted
as principal and to have made it good in that case after the
name Murphy "or one of them" should have been inserted in the
instruction. The defendant's instruction No. 1, "The court fur-
ther instructs the jury that before they can find the defendant,
Jacob Roberts, guilty as charged in the indictment, they must
believe beyond all reasonable doubt, that he entered into a con-
spiracy and confederation with Thomas Hardin, Edmond Mur-
phy, Malan Prater and James Roberts, or any two of them, for

the purpose of robbing B. C. Bateman, and in pursuance of such conspiracy said Bateman was robbed, and that such belief must be founded upon the evidence adduced before them in the trial of this case," was properly modified by the court by striking out "or any of them" and inserting in lieu thereof "or any one of them," and inserting after the word "robbed" the words "as charged in the indictment."

The defendant's third instruction as follows: "The court further instructs the jury, that in arriving at a verdict in this case that they are the sole judges of the facts and credibility of each and every witness introduced in said case, and that they have the right to disregard the testimony of any witness or witnesses that have testified in the said case, and may take into consideration the character and motive for the testimony of each and all of said witnesses," was refused and modified and given as follows: "The court further instructs the jury that in arriving at a verdict in this case, that they are the sole judges of the facts, and credibility of each and every witness introduced in this case, and that they have the right to disregard the testimony of any witness or witnesses who in the opinion of the jury may have testified falsely in this case, or give to the testimony of any such witness such weight as in the opinion of the jury the same may be entitled to, and in ascertaining such weight the jury may take into consideration the character and motive of the witnesses as disclosed by the evidence in this case." The modification was proper, the instruction as offered by the defendant was too sweeping as it was to the effect that the jury had the right to disregard the testimony of any witness or witnesses that had testified in the case without any qualification whatever, which they could not have a right to do and it was properly refused in the shape in which it was offered.

The second assignment is that the court erred in permitting improper evidence to go before the jury as will appear from bill of exception No. 3. This bill of exceptions is that which contains all the evidence in the case and exceptions to certain questions and answers are noted throughout the evidence. This matter is referred to in plaintiff's brief but calls attention to no particular part of the evidence except that he says, "The defendant offered to prove certain statements made by Bateman, the wounded man, immediately after the robbery, which the court refused to permit, to which ruling of the court the defendant ex-

cepted. The circumstances in the case all show that these re-
marks made by Bateman at that time is *res gestae* and the court
erred in refusing to permit the same to go to the jury."

The evidence refused by the court to be given was that of
James Roberts on behalf of the defendants. "Q. Did you have
any conversation with Bateman?" A. "Yes sir, I ask him if he
was dead. He was lying flat on his belly and on his face and
he turned his face up and said 'no.' I said, 'stranger are you
dead?' and he said, 'no.' " Q. "Did you have any other conver-
sation with him?" A. "Yes sir." Q. "What was it?" To
which last question the counsel for State objected and the ob-
jection was sustained and the defendant excepted. Defendant
then asked, "Did Mr. Bateman upon that occasion say to you
that Thomas Hardin and Edmond Murphy had gotten his money,
and that he wanted you and Jake to go and try and get his
money back from them?" objection sustained and defendant ex-
cepted. The first objection should have been overruled as it
was a general question as to what the conversation was, while the
last question suggested the answer to the witness and the ob-
jection was properly sustained. This conversation seems to have
been within a few minutes after the robbery was committeed.

The fifth assignment, that the court erred in refusing to set
aside the verdict of the jury and grant a new trial because the
verdict was contrary to the law and the evidence, it is not neces-
sary here to discuss as the case will at any rate have to be re-
manded for a new trial. The seventh assignment is that the
court erred in refusing to set aside the verdict for the reason
that the prisoner was convicted as principal when as a matter of
fact if there was any evidence against the prisoner, it only
tended to show that he was an accessory before the fact and not
principal. When Bateman, the victim of the robbery, was on
the stand he was asked, "When you started to go across the river
did anybody take you or go with you?" A. "Yes, sir." Q.
"Who?" A. "There was Jim Roberts, Malan Prater, Thomas
Hardin and as well as I can recollect Murphy." Q. "What oc-
curred when you got across the river—over on this side of the
river—on West Virginia?" A. "I was shot and robbed." On
cross-examination he was asked, "Was Jim or Jake Roberts there
at the time you were shot?" A. "Jim had just turned away he
and Malan Prater." Q. "Who first came to you after you were
shot?" A. "Jim Roberts or Jake one, I disremember which,

both of them came." Thomas Hardin witness for the State, was asked to "Tell the jury whether or not, Mr. Hardin, you shot this man?" A. "Yes sir, I did." Q. "Who was present at the time you shot him?" A. "Edmond Murphy." Q. "What happened at that time? Just tell the jury what took place at the time you shot him." A. "When I shot him Mr. Murphy cut his money off of him and taken it and divided it up with me." The evidence taken all together pretty well sustains the seventh assignment of plaitniff in error.

The defendant demurred to the indictment and moved to quash the same, both of which motions were overruled. The indictment is good on demurrer but there was no order in the record showing the finding of the indictment. The record starts out simply with the certificate of the clerk, "That the grand jurors impaneled and sworn in the circuit court of Mingo County, at the term thereof commencing on the 6th day of May, 1901, in and for the body of said county and attending said court, found an indictment against the defendant Jacob Roberts for a felony which with the endorsement thereon by the foreman, a true bill, is as follows, to-wit." So it does not appear from the record that there was either an order impaneling the grand jury or an order finding the indictment by the grand jury. In *State* v. *Gilmore,* 9 W. Va. 641, syl. pt. 2, it is held, "The record of the finding of the grand jury is as essential as the record of the verdict of a jury, as it is the only legal proof of the finding of the indictment." It is never improper to give in the record the order impaneling the grand jury.

When the finding of an indictment is made by the grand jury on a subsequent day to that on which they are impaneled and where the record shows the finding of the indictment by the grand jury, the order referring to the act of the grand jury in returning the indictment into court would be sufficient, but this at least must be shown. Where this is shown by order of the court the regular impaneling of the jury will be presumed.

In the case at bar a writ of *certiorari* would have been issued by this Court to bring up the finding of the grand jury but for the fact that the case must be remanded for a new trial and if the record fails to show the finding of the indictment by the grand jury, the indictment should be quashed. The verdict is set aside, and the case remanded for a new trial to be had therein.

*Reversed.*