# CHARLESTON.

STATE *v.* JESS CROSTON

(No. 5719)

Submitted March 8, 1927. Decided March 15, 1927.

1.  HOMICIDE—*In Absence of Evidence of Conspiracy and That One Fired Fatal Shot, Conviction of Any Person of Several Engaged in Shooting is Not Justified; Evidence That Defendant Shot Deceased in General Affray Held Insufficient to Sustain Conviction of Second Degree Murder.*

    Where several persons engage in a sudden affray, with the use of guns, resulting in the death of one of those present, and

there is no evidence of conspiracy to commit a crime, and each has an equal opportunity, and there is no evidence justifying the conclusion that one of them rather than another fired the fatal shot, the jury is not justified in convicting either.   (p. 380).

(Homicide, 30 C. J. §§ 548, 560.)

2.   CRIMINAL LAW—*Instruction Classifying Witnesses as to Value of Evidence, Unless Based on Well-defined Distinction as to Opportunities and Powers to Know Truth, is Error.*

It is error for a trial court on the trial of one accused of homicide, in instructing the jury, to classify the witnesses in respect to the weight and value of their evidence, unless such classification is based on a well-defined distinction as to the opportunities and powers of the witnesses to know the truth. (p. 382).

Criminal Law, 16 C. J. §§ 2336, 2438.)

(NOTE:   Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Barbour County.

Jess Croston was convicted of second degree murder, and he brings error.

*Judgment reversed; verdict set aside; new trial awarded.*

*Wm. T. George,* for plaintiff in error.

*Howard B. Lee,* Attorney General, *R. A. Blessing,* Assistant Attorney General, and *W. Bruce Talbott,* for the State.

MILLER, JUDGE:

Defendant was indicted and found guilty in the second degree of the murder of Alston Male on November 8, 1925, and was sentenced to imprisonment in the state penitentiary for the term of eighteen years.  He has brought the case here for review upon a writ of error awarded by one of the judges of this court.

The first error assigned is the refusal of the trial court to set aside the verdict and award defendant a new trial, upon the ground, first, that it is contrary to the law and the evidence, second, that the court in giving State's instructions numbers six, ten, twelve, thirteen and fifteen, and each of them, misdirected the jury.

The homicide in question was the result of a quarrel which seems to have ensued between two or three men and boys shortly after the adjournment of a mass-meeting held in a school house on Chestnut Hill, in Barbour County, by the miners' union, on Sunday afternoon, November 8, 1925. What was the occasion of the altercation, and who all participated in it, the evidence leaves in doubt. But one of the witnesses for the State says positively that defendant was one of the number. The principal battle, however, seems to have taken place on the public road a short distance below the school house, at or upon a culvert, where numerous shots were exchanged between two factions, one headed by John T. Male, his father Melker Male, and a grandson Harold Male, on the one side, and Jess Male, his son Homer and one or two others, on the other side. On this occasion John T. Male exchanged some fifteen or twenty shots with Jess Male and his son Homer, all of whom were wounded, some once, some twice; and Alston Male sustained two shots, one a fatal one through the neck, the other through his arm. The fatal shot was charged to the defendant in this case. Homer Male was also shot in the forehead, but the shot did not pierce his skull, and for that reason there is a claim that the ball was the same as the one that went through deceased's neck; but this is not supported by positive evidence. It is shown that some twenty to twenty-five were engaged in the fight, or were near by when it was going on. The State relied mainly on the testimony of William Kennedy, a boy twelve years of age and a grandson of Melker Male, and the testimony of Harold Male, another grandson of Melker Male and a son of John T. Male. The Kennedy boy and Harold Male are the only witnesses, amidst the many, who swore definitely that they saw defendant shoot at the deceased. Harold only saw him have a gun in his hand pointed towards deceased and smoke coming from the barrel; but both these witnesses saw and heard other guns from which a large number of shots were fired. Defendant himself, about nineteen years of age, and other witnesses, swear he was not at the place of the shooting, but had gone down a path about 150 yards to the left of the road

after leaving the school house, with Berkey Male, for dinner, Enoch Male going ahead of them, when he heard the shooting, stopped and started back to where he met James Croston, who told him that Alston had been shot. He testified that he had no gun and had done no shooting, in which he was corroborated by a number of other witnesses. A number of witnesses say William Kennedy was not at the scene of the battle, but was quite a distance away with them, and could not have seen the shooting of Alston Male as he testified. We hardly think it possible, with all the bullets flying, as witnesses on both sides say they were, that William Kennedy, if present and saw any shots fired by defendant at the deceased, could certainly have seen the bullets from defendant's gun strike the deceased and do the personal injury as claimed. But assuming that this boy was present and saw or thought he saw defendant shoot, as he claims, and that Harold Male also saw defendant have a gun in his hands and smoke emerging from it, could the jury rightfully have assumed amidst all the other bullets that were then penetrating the air, that the ball which left the defendant's gun, if he had one, was the fatal bullet? Will such evidence under all the circumstances satisfy the rule of criminal evidence requiring proof beyond a reasonable doubt? We do not think so. Where two or more are engaged in firing guns with fatal result, and each has had equal opportunity to commit the crime, and there is no evidence justifying the conclusion that one rather than another fired the fatal shot, and no evidence of a conspiracy to commit the offense, the jury is not justified in convicting either. *State* v. *Newman*, 101 W. Va. 356; *State* v. *Cremeans*, 62 W. Va. 134; *State* v. *Roberts*, 50 W. Va. 422; 30 C. J. 301; 2 Michie on Homicide, p. 1187, and cases cited.

Respecting the instructions complained of, number 6 told the jury that it was "their duty to bring in a verdict based upon what they believed to be the truthful testimony introduced in the evidence, regardless of the number of witnesses who may have sworn to the contrary, provided they do not believe the evidence of the witnesses who have sworn to the contrary, and you are, therefore, instructed that if only one

witness has sworn positively to having seen the accused, Jess Croston, shoot the deceased, Alston Male, and another witness that saw the accused with a revolver or gun pointed at the deceased and smoke coming therefrom, and if the jury believe from the evidence of these two witnesses, beyond a reasonable doubt, that the accused, Jess Croston, intentionally killed the deceased, Alston Male, without justification, at the time and place and as charged in the indictment herein, then you should find him guilty, notwithstanding that other witnesses may have sworn to the contrary, and notwithstanding that other witnesses may have sworn that one of such witnesses was at another and different place at the time of such shooting, provided, the jury does not believe the evidence of such other witness to testifying to the contrary, but of all this the jury are the sole judges.''

Assuming that the liberty thus sought to be accorded to the jury may have been within the range of the jury's province in weighing and considering the evidence of the witnesses, there was here an effort on the part of counsel and court to emphasize the testimony of the two witnesses for the State, William Kennedy and Harold Male, one a son the other a nephew of John T., who did most of the shooting, these two boys being the only witnesses to the fact of defendant's shooting, while other witnesses for both the State and the defendant, with equal opportunity to observe all the facts, and some of whom said he had no gun and others say they did not see him have a gun or shoot, are by this instruction belittled or discredited. While the instruction may not single out certain facts and give undue prominence to them, to the exclusion of other facts equally as potent, yet it does give undue prominence to the testimony of these particular witnesses; and to say the least of it the instruction is calculated to mislead and deceive the jury, and to call their attention away from the evidence of other witnesses, who failed to see, but who could and would likely have seen the defendant in the act of firing his gun, and his presence at the scene of the shooting, if he had been there, but failed to do so. State's witness Lorena Male, wife of the deceased,

who was in the crowd with him and her son along with others, says she didn't see defendant do any shooting. She says she took her children and ran when Homer began shooting. Harold Male swears that defendant was not present at the first trouble at the school house; saw his father shoot before deceased fell, he did not know how many times; he says also that he did not see William Kennedy there while the shooting was going on; that Jess Croston and Alston Male were good friends. Truman Male, State's witness, did not see William Kennedy until after the fight, and did not see defendant have a pistol, but did see him wearing a sweater, and says if he had been present shooting a gun, "it looked as if he would have seen him." He saw Alston Male fall, but did not see defendant. Saw defendant some thirty or forty yards from where deceased was killed, but did not see him have a gun. James Croston, a witness for defendant, present at the shooting, says John T. Male was doing most of the shooting,— shooting in all directions,—but did not see Jess Croston there; Says John T. Male shot Alston and Homer both. We are detailing so much of the State's and defendant's evidence to emphasize the unfairness of singling out the evidence of William Kennedy and Harold Male and giving it undue prominence, when there was so much evidence conflicting with their testimony. In *Ward* v. *Brown,* 53 W. Va. 227, point 9 of the syllabus, we decided that: "It is error to classify witnesses in respect to the weight and value of their evidence in an instruction to the jury unless this classification is based on a well defined distinction as to the opportunities and powers of the witnesses to know the truth." The same principle is declared in *Kerr* v. *Lunsford,* 31 W. Va. 659, applied to the evidence of expert medical witnesses.

We have considered the errors assigned respecting State's instructions numbers 10, 12, 14, and 15. Number 10 affirms the proposition in general, well founded, that where one without lawful excuse, with intent to kill one person, unintentionally kills another, he will be guilty of the killing of the other, on the principle that one is presumed to intend to

do that which he in fact does. We see nothing wrong with the abstract proposition contained in this instruction.

Instruction number 12, covering the same subject, is in effect the same as number 10, though a little awkwardly expressed. It says, "a man is presumed to do that which he does;" more correctly it should say, "a man is presumed to *intend* that which he does." Otherwise the instruction states the law correctly. Instruction number 15 states the law on intent and justification correctly. We find no reversible errors in instructions numbers 10, 12, 14 and 15.

For the reasons given, however, the judgment will be reversed, the verdict set aside, and the defendant awarded a new trial.

*Judgment reversed; verdict set aside; new trial awarded.*