A. B. HYMAN *et al. v.* CITY OF HUNTINGTON *et al.*

(No. 8543)

Submitted May 11, 1937. Decided June 15, 1937.

*George I. Neal,* for appellants.

*Geo. S. Wallace,* for appellee Marktime Parking Meter Company.

KENNA, PRESIDENT:

This suit was brought in the Court of Common Pleas of Cabell County by A. B. Hyman, Greater Huntington Theater Corporation and Walter H. Lewis against the City of Huntington, Martin V. Chapman in his own right and as Mayor of the City of Huntington, Marktime Parking Meter Company and M. M. King. The purpose was to enjoin the defendants, and each of them, from proceeding further in the purchase of 550 parking meters and the installation of such meters upon the streets of the City of Huntington. A preliminary injunction was awarded and later dissolved in the Court of Common Pleas. An order refusing an appeal was entered in the Circuit Court of Cabell County, and from that order an appeal was allowed to this court.

The first question to be discussed is a motion of the appellees to dismiss this appeal which was based upon the fact that at the time of the application in the Circuit Court of Cabell County for an appeal from the order of the Court of Common Pleas of that county, the judge of the Circuit Court of Cabell County was outside the State of West Virginia and had made known his purpose not to return to his circuit until after his term of office expired on December 31, 1936. Under these circumstances, the judge of the Circuit Court of Wayne County acted upon the application for the appeal. The appellees base their motion to dismiss upon the contention that the judge of the Circuit Court of Wayne County was totally without power to act as the judge of the Circuit Court of Cabell County, hence there was no appeal to the Circuit Court of Cabell County and, therefore, the appeal in this court was improvidently awarded.

Sections 9 and 10 of article 2 of chapter 51 of the Code are designed to meet the situation resulting from the absence of a circuit judge from his circuit, from his disqualification or disability to act in pending cases or from his failure to attend and hold a term of court for any cause. They were enacted in recognition of the great importance to the people of keeping the courts open and judges available at all times to deal with any legal

emergencies that might arise, and in conformity to our constitutional injunction that the courts of the state shall be open and justice shall be administered without fail, denial or delay. They must be liberally construed in order to bring about the practical result which is their aim. Plainly, they must not be permitted to bring about a conflict of function between two or more circuit judges.

Section 10 deals with the election of special judges when for any reason the judge of the court in question is not in attendance at either a regular or special term of court or for any reason is unable to sit in any particular matter or if there is a vacancy in such court by reason of death or resignation. Section 9 provides that a judge of one circuit, by arrangement with the judge of any other circuit or when the office of judge in any other circuit is vacant, may hold the court in any such circuit. This section does not particularly apply to the duties of a judge in term time as does section 10, and it will be noted that while section 10 provides for a vacancy by death or resignation, section 9 contains no such qualification. It will be noted further that while section 10 covers a vacancy "in such court", section 9 deals with a vacancy "in the office of judge". The latter section evidently is intended to cover vacancies in the office of judge other than those which arise *de jure* from the fact that there is no incumbent in that office. Otherwise there would appear to be no reason for the difference in language between that section and section 10. This distinction, we think, is warranted by strict statutory construction. But we are of opinion that the correct application of the sections in question does not lie in strict construction, and that the purpose of section 9 is to make a judge available for any circuit when a situation exists that for practical purposes of the transaction of business may be regarded as a vacancy of a temporary nature in the office of judge of that circuit. We are of the opinion that this very sort of situation arose in this case when the judge of the Circuit Court of Cabell County left his circuit and the state with the declared intention of not returning until after his term of office had ex-

pired. We hold, therefore, that the judge of the Circuit Court of Wayne County had power to act in declining to entertain the appeal from the Court of Common Pleas of Cabell County, and therefore that the motion to dismiss this appeal should be overruled.

Upon the merits of this appeal, several questions in addition to the primary one of whether the installation of parking meters is within the police power of a municipality have been raised and briefed, including the right of the plaintiff, Walter H. Lewis, to bring this suit. We do not feel that we are called upon to discuss all of these matters but on the question of parties we are of opinion that sufficient interest in the subject matter of the suit on the part of the plaintiffs has been shown to prevent a dismissal of the cause for want of proper parties plaintiff. The case was heard in the Common Pleas Court of Cabell County without proof and the injunction was there dissolved and the bill dismissed after hearing upon the bill, the supplemental bill and the answers. In this state of the record we believe that this does not offer a proper case, in view of the question hereinafter to be discussed upon which this appeal is being decided, for this court to consider and to pass upon the important basic problem of whether the installation of parking meters, so-called, is justified as a proper exercise of the police power, or for any other reason. We therefore reserve that question until a case arises in which it has been more broadly and fully developed. We expressly reserve it from any implication arising out of this decision.

The bill of complaint and the amended bill of complaint rest in part upon the allegation that the mayor of the City of Huntington had entered into a contract for the purchase of 550 parking meters from the defendant, M. M. King, at an expenditure of something in the neighborhood of $31,000.00 under the authority, or pretended authority, of a city ordinance passed by the common council of the City of Huntington which reads in part as follows:

> "Section 2. The Mayor is hereby authorized and directed, subject to the approval of the

Council, to establish immediately and from time to time hereafter as traffic conditions require, zones to be known as parking meter zones upon such streets of the City of Huntington as are selected for the location of such zones and in said parking meter zones, the Mayor shall cause parking meters to be installed and shall cause parking meter spaces to be designated as hereinafter provided, and shall fix the time limitations for legal parking in such zones."

"Section 3. The Mayor is hereby directed to provide for the installation, regulation, control, operation and use of the parking meters provided for in this ordinance and to maintain said meters in good workable condition and is hereby invested with power and authority to enter into a contract, after approval of the terms and conditions thereof by this Council, for the purchase and/or installation to be provided for solely from the receipts, funds and revenues obtained from the operation of said parking meters, without in any manner obligating the City to pay for the same from any other source. And the Mayor is further authorized and empowered to enter into a contract or contracts, after approval of the terms and conditions thereof by this Council, for such protection and maintenance of said parking meters as may be necessary to maintain the same in good operating condition and to pay for such parts, protection, and maintenance, exclusively from the receipts, funds and revenues received from the operation of said parking meters."

It is alleged by the bill of complaint, and admitted for the purposes of this case, that the mayor of the City of Huntington has never acted pursuant to section 2 of the ordinance, and that no zones for parking meter purposes have ever been established upon any of the streets of the city, although the work of installing parking meters was actually under way upon Ninth Street at the time of the filing of the original bill. Therefore, in contending that the mayor had authority to purchase parking meters under the terms of this ordinance, and before definite zones for their installation had been established,

the defendants are in the position of contending that the ordinance vests in the mayor the power to purchase parking meters without limitation or restriction. We do not believe that that is the purpose of the ordinance.

Section 3 vests in the mayor the power to buy the parking meters "provided for in this ordinance." We certainly cannot, in view of the zoning provided for in section 2, construe this language as meaning that the mayor should have power to buy parking meters to be installed upon every part of all of the streets of the city. If that is not so, then we must find within the ordinance itself some definition of what parking meters are "provided for" by the ordinance. We think that it is perfectly plain that the parking meters "provided for" are such as would be reasonably necessary to supply the requirements of the parking meter zones to be established by the mayor under section 2 of the ordinance, subject to the approval of the council. The ordinance is subject to no other reasonable construction in our opinion. If this is so, then it necessarily follows that the extent of the power vested in the mayor to purchase parking meters must be determined by the approved zoning of the city for parking meter purposes before the power to purchase can be exercised. In other words, the zoning of the City of Huntington for parking meter purposes was, under the terms of the ordinance, made a condition precedent to the existence of the power of the mayor to purchase the parking meters necessary to serve the zones that were established. Without the fulfillment of that condition, the power of the mayor to purchase the meters "provided for in this ordinance" had no restriction and no definition.

We are of the opinion that the Court of Common Pleas of Cabell County erred in dissolving the injunction, and therefore its order will be reversed and the injunction, which was reinstated by this court when the appeal here was granted, will be perpetuated.

*Reversed; injunction perpetuated.*